523 So.2d 740 (1988)
ORLANDO LIGHT BULB SERVICE, INC., et al., Appellants/Cross-Appellees,
v.
LASER LIGHTING AND ELECTRICAL SUPPLY, INC., etc., Appellee/Cross-Appellant.
LASER LIGHTING AND ELECTRICAL SUPPLY, INC., etc., Appellant,
v.
Roger BROWNING, Appellee.
Nos. 87-535, 87-658.
District Court of Appeal of Florida, Fifth District.
April 14, 1988.
*742 James E. Shepherd of Shepherd, McCabe & Cooley, Orlando, for Orlando Light Bulb Service, Inc., LBM Enterprises, Inc. and Roger Browning.
Charles E. Williams, Jr. and Paul L. San Giovanni of Smith & Schnacke, Orlando, for Laser Lighting Elec. Supply, Inc.
ORFINGER, Judge.
In these consolidated appeals, we reverse the final judgment in Case No. 87-535 in favor of appellee Laser Lighting and Electrical Supply, Inc. (Laser) imposing liability on appellants Orlando Light Bulb Service, Inc. (OLB) and LBM Enterprises, Inc. (LBM) for a debt owed to Laser by American Delta Corporation, d/b/a Lite World and we affirm the judgment in Case No. 87-658 dismissing Laser's claims against appellee Roger Browning. In case No. 87-535, the trial court concluded that OLB and LBM were obligated for Lite World's debt to Laser on the theory that they had engaged in a transaction which amounted to "a de facto merger and a mere continuation of the business ..." of Lite World. There is no substantial, competent evidence to support that conclusion.
Laser is engaged in the business of wholesale distribution of light bulbs and fixtures. Lite World was a distributor of the same products to retail customers. Laser sold merchandise to Lite World on open account. When it received no payment for certain purchases, it filed suit on the open account and applied for and on October 31, 1984 obtained a prejudgment writ of attachment against the assets of Lite World. Laser later amended its complaint to include OLB, LBM and Roger Browning as defendants, alleging, among other things, that OLB and LBM had impliedly assumed Lite World's obligations, a de facto merger or mere continuation, and a violation of Florida's Bulk Sales Act.
Florida follows the corporate law rule which does not impose the liabilities of a selling predecessor corporation upon the buying successor company unless (1) the successor impliedly assumes the obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor corporation is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor. See Bernard v. Kee Manufacturing Company, Inc., 409 So.2d 1047, 1049 (Fla. 1982); Reina v. Gingerale Corp., 472 So.2d 530 (Fla.3d DCA 1985) cf., Kelly v. American Precision Industries, 438 So.2d 29 (Fla. 5th DCA 1983).
There was neither an express nor implied assumption of Lite World's obligations. None of the elements of de facto merger or mere continuance are present here.[1] Neither OLB nor LBM took over the business of Lite World. OLB, a corporation owned by two shareholders completely unrelated to Lite World, purchased $2,000 worth of inventory, a copier and some furniture from Lite World. It is undisputed that the inventory was purchased and paid for at fair market value, established by a distributor price book.[2] The evidence indicated that before this purchase, *743 Lite World had between $5,000 and $6,000 in inventory. Additionally, Lite World had approximately $22,000 in receivables, at least $10,000 of which were later collected by one of its corporate officers. Thus, there is no factual support for Laser's assertion that OLB and LBM acquired all or even substantially all of Lite World's assets. There was never any commonality of shareholders between OLB and LBM on the one hand, and Lite World on the other, nor was OLB formed for the purpose of taking over Lite World's business, because it had been engaged in the same business for approximately ten years before this transaction took place.
Roger Browning and one Mike Merola managed Lite World's business during the time pertinent here. Merola left Lite World to become employed by Laser, and took several independent salesmen with him. These salesmen maintained their own customer lists and contacts. Merola testified that conditions at Lite World at that time were "like rats leaving a sinking ship." Browning was still employed at Lite World when OLB purchased the merchandise and inventory. Several weeks later, he too left Lite World and joined OLB, and together with OLB's shareholders, formed the new corporation LBM, after which OLB was phased out. During that time Lite World continued to function. These facts do not support a conclusion that either OLB or LBM was a de facto continuation of Lite World. Lite World did not reorganize, but ultimately went defunct. Finally, the trial court specifically found no fraud in the transaction. Appellee's reliance on Florida Brogdex Distributors, Inc. v. Hulsey, 103 Fla. 723, 138 So. 728 (1931) is misplaced, because there, it was alleged that the successor corporation had no capital or assets with which to begin business except that which it obtained from the predecessor corporation, that both corporations had the same directors and president, that the stockholders were the same in both corporations and that the successor had been formed for the express purpose of taking over the assets of the predecessor. Those are not the facts here.
Neither can the judgment be supported on the ground that the transfer of inventory and equipment violated the bulk transfer provisions of Florida's Uniform Commercial Code.[3] There was no transfer of a "major part" of Lite World's inventory.[4] There is no evidence that the equipment transferred was a "substantial part" of Lite World's equipment, but even if it had been, the statute does not apply unless the equipment transfer is made in connection with a bulk transfer of inventory, which, as we have pointed out, did not occur here.
Laser argues also that the evidence supports a finding that the purchase of the inventory and equipment was a fraudulent effort to avoid the liability of Lite World, but we disagree. Laser had obtained a prejudgment writ of attachment against the assets of Lite World on October 31, 1984, the same day that OLB purchased the inventory, but there is no evidence that OLB knew about the issuance of the writ. Moreover, the record does not show that this writ was ever served. An amended writ of attachment was issued November *744 14, 1984 but the sale in question had occurred two weeks earlier.
When a purchase of goods is made in good faith and for valuable consideration from the owner who is subject to a creditor's claim, no fraud is imputed to the purchaser. Bay View Estates Corp. v. Southerland, 114 Fla. 635, 154 So. 894 (1934). The exception to this rule is where the purchaser has knowledge of facts or circumstances that would induce an ordinary prudent person to make inquiry which if followed up would lead to the discovery and the purchaser fails to make this inquiry. Valdosta Mercantile Co. v. White, 52 Fla. 453, 42 So. 633 (1906). Knowledge that the seller is indebted to another or even knowledge of the existence of a valid and pending cause of action against the seller is insufficient to show the purchaser's participation in a fraudulent conveyance. Reina v. Gingerale Corp., supra. There is no evidence that OLB knew of the writ of attachment. The testimony of one of OLB's shareholders shows that at best, he was only aware of Laser's claim against Lite World. This is insufficient to hold OLB liable for a fraudulent transfer. Also, Browning remained an employee of Lite World until November 13. In sum, his knowledge could not be imputed to OLB when the sales were made on October 31. Thus, there was no basis for imposing liability against the defendants based on the sale of some of Lite World's furniture and inventory of light bulbs.
Finally, Laser argues that there were sufficient "badges of fraud" so as to establish as a matter of law that OLB intended to defraud Lite World. Laser cites to the various badges of fraud present in this case, i.e., insufficient consideration for the transfer of the copier machine, LBM's knowledge of pending litigation and the close business relationship between Browning and the defendants. These badges of fraud, standing alone, unrebutted and uncontradicted could support a finding that the conveyance relating to the furniture was fraudulent. See Stephens v. Kies Oil Company, Inc., 386 So.2d 1289 (Fla. 3d DCA 1980). However, the presence of fraud is to be determined by the particular facts surrounding a particular conveyance and not every conveyance of property by one against whom suit is pending will be deemed fraudulent. Kirk v. Edinger, 380 So.2d 1336 (Fla. 5th DCA 1980). Here, the trial judge, as the finder of fact, specifically found no fraud or fraudulent intent.
We have examined Laser's points raised in its consolidated appeal, but we find them without merit. The judgment entered in Case No. 87-535 in favor of Laser is hereby reversed. The judgment in Case No. 87-658 in favor of Browning is hereby affirmed.
SO ORDERED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] A de facto merger occurs when one corporation is absorbed by another, i.e., there is a continuity of the selling corporation evidenced by such things as the same management, personnel, assets, location and stockholders. Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc., 775 F.2d 38 (2d Cir.1985). The finder of fact may look to any other factors reasonably indicative of commonality or of distinctiveness. "The bottom-line question is whether each entity has run its own race, or whether there has been a relay-style passing of the baton from one to the other." Oman International Finance Ltd. v. Hoiyong Gems Corp., 616 F. Supp. 351, 361 (D.C.R.I. 1985).
[2] It is apparently also undisputed that the copier was purchased at less than fair market value, but as will be shown, this fact alone does not support the judgment in favor of Laser.
[3] Section 676.102, Florida Statutes (1987) defines bulk transfers:

(1) A "bulk transfer" is any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (s. 679.109) of an enterprise subject to this chapter.
(2) A transfer of a substantial part of the equipment (s. 679.109) of such an enterprise is a bulk transfer if it is made in connection with a bulk transfer of inventory, but not otherwise.
(3) The enterprises subject to this chapter are all those whose principal business is the sale of merchandise from stock, including those who manufacture what they sell, and those enterprises doing business as restaurants that are licensed by the Division of Hotels and Restaurants of the Department of Business Regulation.
(4) Except as limited by the following section all bulk transfers of goods located within this state are subject to this chapter.
[4] For a discussion of what constitutes a "major part" of a seller's inventory, see White & Summers, Uniform Commercial Code, (2d ed.) § 19-2, and cases cited.