MAHER AND ASSOCIATES, INC., Plaintiff-Appellee, v. QUALITY CABINETS, a Division of Texwood Industries, Inc., Defendant-Appellant.

Second District No. 2—93—0700

Opinion filed September 29, 1994.—Rehearing denied November 2, 1994.

John J. Mustes and Eric P. Loukas, both of Mustes & Bridgman, of Chicago (Anthony J. Bruozas, of counsel), for appellant.

Carl F.J. Henninger, David E. Zajicek, Douglas A. Slansky, and Shari L. Friedman, all of Keck, Mahin & Cate, of Oakbrook Terrace (Jacqueline W. Vlaming, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Quality Cabinets (Quality), appeals from the grant of summary judgment for the plaintiff, Maher & Associates, Inc. (Maher), in which the circuit court awarded Maher $69,514.52 in a contract dispute. The judgment included exemplary damages and attorney fees assessed pursuant to the Illinois Sales Representative Act (Sales Act). (Ill. Rev. Stat. 1991, ch. 48, par. 2250 *et seq.* (now 820 ILCS 120/0.01 *et seq.* (West 1992)).) We reverse and remand for further proceedings.

Maher, a Minnesota corporation whose principal place of business is Wheaton, Illinois, entered into a marketing agency agreement (the agreement) on September 14, 1988, with Quality, a Texas corporation that manufactures cabinets and has its principal place of business in Duncanville, Texas. Under the agreement, Maher was granted the exclusive right to sell Quality's line of cabinets in North Dakota, South Dakota, Minnesota, Wisconsin, and northern Illinois.

Maher agreed not to represent any products that compete directly with Quality's.

Paragraph one of the agreement defines a "directly competing" line as "one which is stock (not made-to-order), of similar construction, and priced within 10% of Quality at F.O.B. destination prices." Paragraph one also provides that the failure by Maher to adhere to this restriction would terminate the agreement immediately, and Quality would be required to pay commissions earned for 30 days following such termination.

Paragraph seven of the agreement permits termination by mutual agreement or by written notice from either party to the other. Paragraph seven provides for payment of commissions to Maher for 60 days following a "no fault" termination.

Paragraph nine provides that any claim or cause of action arising out of the agreement must be brought in Dallas County, Texas, and that Texas law governs the contract.

On November 15, 1989, Quality issued a memorandum to Maher and its other sales representatives advising them not to represent products from Republic Cabinets, which Quality determined was a direct competitor. Maher disagreed that Republic was a directly competing line and represented Republic as well as Quality.

On May 4, 1990, Quality notified Maher that it was terminating the agreement. On June 18, 1990, Quality sent Maher a letter offering to tender a check for $2,782.57 for commissions that it calculated were due Maher under the 30-day provision of paragraph one. Maher rejected the offer and demanded payment of commissions for 60 days pursuant to paragraph seven.

On May 1, 1991, Maher filed a verified two-count complaint against Quality alleging breach of contract for Quality's failure to pay commissions for 60 days after termination of the agreement and violation of section 2 of the Sales Act for failure to pay those commissions within 13 days of when they became due following termination. (820 ILCS 120/2 (West 1992).) Quality filed a motion to dismiss based on the agreement's choice-of-forum clause.

The circuit court of Du Page County denied Quality's motion to dismiss and ordered it to file an answer. Quality next filed a motion to certify the matter for appeal pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), which was denied. Quality then filed an answer that again raised the choice-of-law issue as an affirmative defense. Quality also claimed that Maher breached the agreement by representing a direct competitor and therefore was entitled to commissions for only 30 days after termination.

On February 24, 1992, Maher filed a motion for summary

judgment, alleging that there were no genuine issues of material fact and that, based upon the pleadings and affidavits it attached, it was entitled to judgment as a matter of law. Maher asked for a judgment of $19,076.67, plus interest of $1,589.75. Maher also sought exemplary or punitive damages of $57,229.98 and attorney fees of $10,917, plus court costs, pursuant to section 3 of the Sales Act (820 ILCS 120/3 (West 1992)).

In support of its motion, Maher provided the affidavit of its manager, Lynette Maher, who declared that she was "familiar with the pricing of both the Quality products and Republic products" and that the Republic cabinets were between 18% and 39% less expensive than the Quality products. As such, the Republic cabinets were not direct competitors of Quality, and, therefore, Maher's representation of Republic did not violate the agreement. The affidavit further claimed that, because Maher did not breach the noncompetition provision of paragraph one, the firm was entitled to commissions for 60 days following termination. Maher calculated that Quality owed it $19.076.67 in commissions. Maher also offered the affidavit of one of its attorneys, Carl F.J. Henninger, who estimated that Maher reasonably incurred attorney expenses of $10,917.

Quality responded to the motion for summary judgment by denying that it breached the agreement or the terms of the Sales Act, and it challenged the amount of commissions that Maher claimed it was due. Further, Quality contended that it owed Maher commissions for 30, not 60, days.

In support of its response to the motion for summary judgment, Quality offered the affidavit of Bobby C. Ladd, the chief executive officer of Texwood Industries, the parent company of Quality Cabinets. Ladd declared that his firm sent a memorandum to Maher and other sales representatives informing them that it would not allow dual representation of Quality and Republic Cabinets. Ladd stated that, when Quality discovered that Maher was representing Republic, it terminated the agreement. He declared that his firm determined the amount of commissions it owed Maher and tendered that amount, but Maher declined the offer.

Ladd also claimed that, during the negotiations which followed termination, Quality determined that Maher was not entitled to a portion of the commissions it claimed because one of the customers that Maher had developed for Quality made payment under a promissory note. Ladd said that it has always been the position of Quality that commissions are earned solely on cash receipts and that commissions are earned only when an installment payment on a note is actually received by Quality. Ladd said that Maher was aware of this policy prior to the time their agreement was terminated.

On April 22, 1992, the circuit court granted "partial" summary judgment, finding that Quality was liable for an undetermined sum as commissions for 60 days following termination of the agreement. The court also found that Maher did not violate the noncompetition clause of paragraph one because Republic was not a direct competitor of Quality. The court scheduled a hearing on damages and ordered Quality to produce information on all compensation from any source for a period of 60 days after the agreement was terminated.

On January 14, 1993, the trial court determined that Maher was entitled to $19,076.67 in commissions, plus punitive damages pursuant to section 3 of the Sales Act (820 ILCS 120/3 (West 1992)), which permits exemplary damages of up to three times an amount due. The trial court imposed double the commissions that Maher was due, plus attorney fees and costs. The total judgment was $69,514.52, plus court costs.

Quality filed a motion for rehearing or modification or vacation of judgment on February 26, 1993, which was denied following a hearing on May 11, 1993. The trial court awarded Maher additional attorney fees of $6,367.45 for expenses incurred in the motion for rehearing. Quality filed a timely notice of appeal on June 4, 1993.

On appeal, Quality claims that the trial court committed reversible error when it (1) refused to enforce the agreement's plainly worded choice-of-forum and choice-of-law provision; (2) granted summary judgment when a genuine issue of material fact existed; (3) improperly awarded Maher commissions based on all outstanding invoices with Quality rather than on cash receipts; and (4) imposed exemplary damages and attorney fees without a specific finding of bad faith by Quality. Quality also claims that the Sales Act, as applied to it, is an unconstitutional burden on interstate commerce.

Initially we note that, because this case comes to us via summary judgment, we have *de novo* review on appeal. *Olympic Restaurant Corp. v. Bank of Wheaton* (1993), 251 Ill. App. 3d 594, 598.

Quality first argues that this suit must be dismissed because the agreement plainly states in paragraph nine that Texas law governs the contract and "[a]ny claim or cause of action arising out of, in connection with, by virtue of the relationship created by this agreement, shall be brought and filed in Dallas County, Texas."

■ A forum-selection clause in a contract is *prima facie* valid and should be enforced unless the opposing party shows that enforcement would contravene the strong public policy of the State in which the case is brought or that the chosen forum would be seriously inconvenient for trial. (*Calanca v. D&S Manufacturing Co.* (1987), 157 Ill. App. 3d 85, 88.) If both parties freely enter an agreement contemplat-

ing such inconvenience should there be a dispute, one party cannot successfully argue inconvenience as the reason for voiding the forum clause. (*Calanca*, 157 Ill. App. 3d at 88.) The "arm's-length negotiation between experienced and sophisticated businessmen[ ] should be honored by the parties and enforced by the courts, absent some 'compelling and countervailing reason' why it should not be enforced." *Calanca*, 157 Ill. App. 3d at 88, quoting *The Bremen v. Zapata Off-Shore Co.* (1972), 407 U.S. 1, 18, 32 L. Ed. 2d 513, 525, 92 S. Ct. 1907, 1917-18.

In the present matter, the parties operated at arm's length and appeared to be equally sophisticated in business matters. Thus, inconvenience alone will not be sufficient to void this forum-selection clause.

■ However, as we have noted, we may void the forum-selection clause if it violates a fundamental Illinois public policy. (*Calanca*, 157 Ill. App. 3d at 88.) When the legislature, by enacting a statute, declares the public policy of the State, the judicial branch must defer to that pronouncement. (*Lyons v. Turner Construction Co.* (1990), 195 Ill. App. 3d 36, 41, citing *Roanoke Agency, Inc. v. Edgar* (1984), 101 Ill. 2d 315, 327.) Although no cases within our jurisdiction have determined whether the Sales Act evinces the legislature's pronouncement of public policy, Quality directs our attention to a memorandum order of the United States District Court for the Northern District of Illinois which decided this precise question: *Midwest Enterprises, Inc. v. Generac Corp.* (N.D. Ill. 1991), No. 91—C—2229, WL 169059. The court in *Midwest* concluded that the Sales Act constitutes the legislature's pronouncement that protecting sales representatives is fundamental public policy in Illinois. (*Midwest*, No. 91—C—2229.) We agree.

The ultimate objective for a court of review in construing the meaning of a statute is to ascertain the true meaning and intent of the legislature. (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 111; *People v. Boykin* (1983), 94 Ill. 2d 138, 141.) The language used by the legislature is usually the best indication of the drafters' intent. (*Collins*, 155 Ill. 2d at 111.) Thus, when the language of a statute is clear, it will be given its clearly understood meaning without resort to other aids of construction. *People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197.

■ Section 2 of the Sales Act provides: "Any provision in any contract between a sales representative and principal purporting to waive any of the provisions of this Act shall be void." (820 ILCS 120/2 (West 1992).) The fact that section 2:

"[L]abels any such purported waiver 'void' rather than 'void as

against public policy,' is mere semantics; both formulations convey the same concept—the Illinois General Assembly has deemed it a 'fundamental policy of the state' within the meaning of *** [section 2 of the Sales Act] to protect the relative bargaining power and thus the commissions of sales representatives working in Illinois." *Midwest*, No. 91—C—2229.

The only reasonable interpretation of section 2 of the Sales Act is that the legislature was announcing fundamental public policy when it decided that any contract purporting to waive any provisions of the Act is void. Therefore, we void the forum-selection clause of the agreement in this matter.

It does not automatically follow that because the forum-selection clause is void we must also void the parties' plainly worded and mutually bargained-for provision to apply Texas law to any dispute arising under the agreement.

Choice-of-law issues are closely related to, but are distinct from, questions of forum selection. However, for the following reasons, we conclude that this case must be determined under Illinois law in order to avoid the absurd result of permitting this litigation to be brought in Illinois because of the public policy concerns incorporated in the Sales Act and then requiring the application of Texas law, which has no statute or case law comparable to our Sales Act.

■ Illinois courts have followed the analysis provided in the Restatement (Second) of Conflict of Laws (1971) (hereinafter Restatement) when faced with choice-of-law questions. (See, *e.g., Nelson v. Hix* (1988), 122 Ill. 2d 343, 346-50; *Lyons*, 195 Ill. App. 3d at 39; *Donaldson v. Fluor Engineers, Inc.* (1988), 169 Ill. App. 3d 759, 762.) Section 187 of the Restatement applies when the parties, as here, have made an express choice of law in their contract. (Restatement § 187.) Under section 187, when an express choice of law is made, that provision will be given effect in Illinois unless it would *both* violate fundamental Illinois public policy *and* Illinois has a "materially greater interest" in the litigation than the chosen State. *Lyons*, 195 Ill. App. 3d at 41.

■ We have already determined that the protection of sales representatives constitutes a fundamental public policy in Illinois. However, it is clear that Illinois does not have a "materially greater interest" in this litigation than does Texas. Quality is incorporated in Texas and has its primary place of business there. The agreement in this matter was designated a Texas contract. Maher, though maintaining its primary place of business in Illinois, is incorporated in Minnesota, and its work for Quality involves four States other than Illinois.

Thus, if we were to apply the Restatement test rigidly, we would have to conclude that Texas law must apply because this matter does not satisfy both prongs of the Restatement test. However, the analysis contained in the Restatement is a guide for courts; it is not blackletter law to be upheld against all other considerations. Illinois is among those States that generally follow the modern approach to choice-of-law questions, and this approach places the greatest importance on the public policy of the State in which a case is brought. (*Lyons*, 195 Ill. App. 3d at 39.) If we were to use the Restatement formulation to insist that Texas law be applied to this matter, we would thwart the strong public policy of protecting sales representatives in Illinois, because Texas has no law which provides the strongest protection offered by the Sales Act: the threat of treble damages for the failure to pay sales commissions in a timely fashion. Therefore, we decline to use the Restatement rigidly and conclude that the choice-of-law clause in the agreement is void. We will apply Illinois law in this matter.

We next consider Quality's claim that summary judgment was improperly granted. Summary judgment is properly granted only when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. (*Olympic Restaurant*, 251 Ill. App. 3d at 598; 735 ILCS 5/2—1005(c) (West 1992).) Summary judgment should not be granted unless the "right of the moving party is clear and free from doubt." (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Evidence in support of the motion must be strictly construed against the moving party. *Siegel v. Levy Organization Development Co.* (1991), 219 Ill. App. 3d 579, 585.

In contract cases, a genuine issue of material fact exists when a key provision of a contract contains an ambiguity requiring extrinsic evidence to resolve. (*Village of Glenview v. Northfield Woods Water & Utility Co.* (1991), 216 Ill. App. 3d 40, 49.) Whether an ambiguity exists is a question of law for the court to determine. (*Elliott v. LRSL Enterprises, Inc.* (1992), 226 Ill. App. 3d 724, 730.) If reasonable persons could draw different inferences from undisputed facts, summary judgment is not appropriate, and the matter should proceed to trial. *Olympic Restaurant*, 251 Ill. App. 3d at 598-99.

In the present matter, the trial court concluded as a matter of law that Maher was entitled to summary judgment. The court found that Maher did not breach the noncompetition clause of the agreement by representing Republic Cabinets. The court based this finding on the affidavit of Lynette Maher, who declared that Republic was not a directly competing line of Quality because Republic's products were 18% to 39% cheaper than Quality's.

Quality executive Bobby C. Ladd countered by stating that his company notified Maher not to represent Republic. Although this does not directly refute the cost figures alleged by Maher, it asserts that Maher was incorrect in deciding that it could properly represent both Republic and Quality. We believe that Ladd's affidavit was a tacit denial of Maher's fundamental claims and that reasonable persons could draw different inferences from the facts in this matter. Indeed, the competing affidavits appear to raise more questions than they answer. As such, summary judgment was inappropriately granted.

It is important to note that the trial court declared that it "was not sure that the affidavit of Mr. Bobby C. Ladd is sufficient to rebut the affidavit of Lynette Maher." Nonetheless, the court granted summary judgment for Maher. Since summary judgment is only appropriate when an issue of fact is free from doubt, the court should have allowed the matter to proceed to trial, especially as the gravamen of this case is whether Quality was justified in invoking the noncompetition clause of paragraph one. If it was justified in doing so, then it correctly tendered commissions for just 30 days after termination, and it did not violate the Sales Act. Conversely, if Quality was not justified in invoking paragraph one, its notice of termination was governed by paragraph seven and it owed Maher commissions for 60 days following the termination. If Quality owed Maher commissions for 60 days, it might well have violated the Sales Act provision that commissions must be paid within 13 days of when they are earned after termination and, thereby, exposed itself to punitive damages. The scant, and conflicting, declarations contained in the affidavits do not answer these questions.

Maher also claims that Quality admitted in its written motion for reconsideration that Republic was not a direct competitor of Quality and, therefore, Maher did not violate the agreement's noncompetition clause.

Quality argued in its written motion for reconsideration that the memorandum it sent to Maher advising it not to represent Republic operated as a modification to their agreement and that Maher acquiesced in the modification.

■ A contract is validly modified if the party which did not propose the changes is shown to acquiesce in the modification through a course of conduct consistent with acceptance. (*Corrugated Metals, Inc. v. Industrial Comm'n* (1989), 184 Ill. App. 3d 549, 556.) Whether the terms of a written contract are modified by acts or conduct is a question for the trier of fact. *Sosin v. Hayes* (1994), 258 Ill. App. 3d 949, 952.

■ Maher contends on appeal that the modifications claim by Quality actually constitutes an admission by Quality that, under the original terms of paragraph one of their agreement, Republic was not a direct competitor. However, if Quality can prove at trial that Maher acquiesced in this modification, then Republic was, by agreement, a direct competitor and Quality was justified in terminating their agreement pursuant to the noncompetition clause.

Maher further claims that Quality has waived its right to argue modification because Quality did not raise that claim until filing its motion to reconsider. As we have reversed the grant of summary judgment and ordered the matter remanded for further proceedings, no waiver has yet occurred.

■ Another issue of material fact which must be determined in a trial is whether Quality owed Maher commissions for business which Maher solicited for Quality but for which Quality did not actually receive cash payment within the appropriate time period (30 or 60 days) following termination.

Maher contends that it was entitled to payment for all commissions attributable to orders received by Quality from Maher's customers for 60 days following termination, regardless of when those customers actually paid Quality. Quality counters that it only owes commissions on cash payments it actually receives within the cutoff period. The Sales Act provides:

"(2) When a commission becomes due shall be determined in the following manner:

(A) The terms of the contract between the principal and salesperson shall control;

(B) If there is no contract, or if the terms of the contract do not provide when the commission becomes due, or the terms are ambiguous or unclear, the past practice, used by the parties shall control;

(C) If neither (A) nor (B) can be used to clearly ascertain when the commission becomes due, the custom and usage prevalent in this State for the parties' particular industry shall control." 820 ILCS 120/1(2) (West 1992).

Paragraph five of the agreement provides: "Commissions shall be deemed earned by Agent *upon payment* of invoices by customers." (Emphasis in original.) Thus, the plain language of the agreement supports Quality's position. However, the record does not disclose whether a promissory note could be considered "payment" under paragraph five. Ladd declared in his affidavit that it has always been Quality's policy to pay commissions only on cash receipts and that Maher was aware of this policy prior to termination of their

agreement. This, however, does not settle the matter. Maher may well have known of Quality's policy without acceding to it. This factual issue must be resolved at trial.

 We next consider Quality's contention that the trial court erred in determining that Maher was entitled to exemplary damages. The trial court imposed punitive damages equal to twice the commissions that it determined Quality owed Maher. In doing so, the court declared that "[w]hile I can't say the defendants [Quality] acted in good faith, I can't say that they acted in bad faith." The trial court determined that the Sales Act does not require a finding of bad faith before exemplary damages may be imposed.

Section 3 of the Sales Act provides:

> "A principal who fails to comply with the provisions of Section 2 concerning timely payment or with any contractual provision concerning timely payment of commissions due upon the termination of the contract with the sales representative, *shall be liable in a civil action for exemplary damages in an amount which does not exceed 3 times the amount of the commissions owed* to the sales representative. Additionally, such principal shall pay the sales representative's reasonable attorney's fees and court costs." (Emphasis added.) 820 ILCS 120/3 (West 1992).

Although the statute makes no mention of bad faith or culpability, case law in this State makes it clear that punitive damages should not be awarded absent a finding of culpability that exceeds bad faith. See *Cox v. Doctor's Associates, Inc.* (1993), 245 Ill. App. 3d 186, 220; *Totz v. Continental Du Page Acura* (1992), 236 Ill. App. 3d 891, 909.

"Punitive, or exemplary, damages are not awarded as compensation, but serve instead to punish the offender and to deter that party and others from committing similar acts of wrongdoing in the future." (*Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 414.) As such, punitive damages may be awarded "only for conduct involving an element of outrage similar to that normally found in crime. The conduct must be outrageous, *i.e.*, defendant's acts are done with an 'evil motive' or with 'reckless indifference to the rights of others.' " (*Johnston v. Anchor Organization for Health Maintenance* (1993), 250 Ill. App. 3d 393, 397-98, quoting Restatement (Second) of Torts § 908, Comment *b*, at 464-65 (1979).) Our supreme court declared in *Loitz* that the degree of culpability required for the imposition of punitive damages is that which "approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it." *Loitz*, 138 Ill. 2d at 416.

On remand, Maher will be entitled to exemplary damages only if

it can demonstrate that (1) Quality violated the Sales Act by not remitting commissions within 13 days of when they were due following termination, and (2) Quality's behavior in withholding those commissions beyond the statutory period was outrageous and the moral equivalent of criminal conduct. Although the trial court found that Quality did not demonstrate either good faith or bad faith, that finding was based on an incomplete view of the evidence and, therefore, will not be binding at trial.

However, no showing of culpability is necessary for the imposition of reasonable attorney fees and court costs under the Sales Act because these damages are compensatory and not punitive and because the plain language of section 3 of the Sales Act provides that attorney fees and costs "shall" be imposed for a violation of section 2 of the Sales Act. (820 ILCS 120/3 (West 1992); accord *Graunke v. Elmhurst Chrysler Plymouth Volvo, Inc.* (1993), 247 Ill. App. 3d 1015, 1020.) Of course, Maher is not entitled to the mandatory imposition of attorney fees and costs provided for under the Sales Act unless it is first determined at trial that Quality violated section 2 of the Sales Act relating to the timely payment of commissions. Thus, the award of attorney fees granted by the trial court pursuant to its summary judgment order is vacated.

Finally, we note Quality's claim that the Sales Act as applied to it violates the commerce clause of the United States Constitution. This issue was not raised in the trial court and, therefore, is waived for purposes of this appeal. (See *Johnson v. Johnson* (1993), 244 Ill. App. 3d 518, 523.) The waiver rule applies to appeals of summary judgment orders. *Palomar v. Metropolitan Sanitary District of Greater Chicago* (1992), 225 Ill. App. 3d 182, 187.

The judgment of the circuit court of Du Page County is reversed, and the cause is remanded in accordance with this opinion.

Reversed and remanded.

QUETSCH and DOYLE, JJ., concur.