[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 7, 2008
THOMAS K. KAHN
CLERK

_____

Nos. 06-15262 &
07-10167

_____

D. C. Docket No. 05-80359-CV-DMM

GARY BROWN & ASSOCIATES, INC.,
a Florida corporation,

Plaintiff-Appellee
Cross-Appellant,

versus

ASHDON, INC.,
d.b.a. Impression Bridal,
EMME BRIDAL, INC.,
a Texas corporation,
IMPRESSION BRIDAL, INC.,
a Texas corporation,

Defendants-Appellants
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 7, 2008)**

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Appellant/Cross-Appellee Ashdon, Inc., Emme Bridal, Inc. ("Emme"), and Impression Bridal, Inc. ("Impression") (collectively, "Appellants") appeal the district court's allowance of testimony relating to a prior copyright infringement lawsuit against Impression.

Appellee/Cross-Appellant Gary Brown & Associates, Inc. ("GBA") appeals on three grounds: (1) error in dismissing Emme's contract liability at summary judgment; (2) error in dismissing exemplary damages under the Illinois Sales Representative Act ("ISRA") at summary judgment; and (3) abuse of discretion in reducing attorney's fees and costs. Upon thorough consideration of the parties' presentations at oral argument, the parties' briefs, and the record, we affirm.

## I. BACKGROUND

GBA is a Florida corporation that acts as an independent sales representative for clothing apparel companies. GBA's revenues are generated solely from the commissions earned by its president, Gary Brown.

Nick Yeh is the sole owner of Impression, which manufactures women's apparel in China for sale throughout the United States. In 1992, GBA entered into

an agreement to sell bridal dresses for Impression.[1] Over the next several years, the two companies enjoyed a close and amicable business relationship.

In 1997, Eve of Milady, an unrelated competitor, brought a copyright infringement suit alleging that Impression had been copying its designs. According to GBA, the Special Magistrate informed Impression that it could continue manufacturing the subject bridal wear if a small modification was made to the patterns of lace. Eve of Milady and Impression ultimately settled the lawsuit.

On April 7, 1997, either while the lawsuit was still pending or shortly after settlement, Mike Yeh, who had spent ten years learning the bridal business from his brother Nick, formed the separate company, Emme Bridal, Inc. From its inception, Mike has been the sole owner of Emme, which carries a line of modified, compliant versions of the Eve of Milady dresses.

GBA began selling dresses for Emme, while continuing to sell for Impression. GBA did not enter into a written contract with Emme. For reasons not relevant here, the relationship between Gary Brown and the Yeh brothers eventually fell into disharmony. On January 14, 2005, GBA received a letter from

---

[1] In 2000, Impression was dissolved and Ashdon, Inc. was created. Ashdon assumed the assets and liabilities of Impression.

Nick Yeh terminating the relationship for both Impression and Emme.

When GBA was unable to collect certain commissions from Impression or Emme, GBA filed suit against both companies for breach of contract (Count I), violation of the Illinois Sales Representative Act ("ISRA") (Count II), and accounting (Count III). At summary judgment, the district court held that Emme was not liable for Counts I and III because Emme was not a party to the original agreement and was not a successor-in-interest to Impression. Further, the court held that exemplary damages under ISRA were not available to GBA.

At trial, the primary issue was whether Impression was bound by the terms of a written contract proffered by GBA. If the written contract controlled, GBA was entitled to certain commissions extending sixty days past GBA's date of termination. Conversely, if the jury were to find that the parties did not bind themselves to the written contract, but instead were bound by the same oral understanding that Impression and Emme used with nearly all of their sales representatives, GBA had no claim to commissions past the date of termination. Also at issue was whether Impression and Emme violated ISRA, which requires payment of commissions within thirteen days of a sales representative's termination date. 820 Ill. Comp. Stat. 120/2.

After a three-day trial, the jury returned a verdict for GBA on: (1) the breach

4

of contract claim against Impression ($88,839.60); (2) the ISRA claim against Impression ($30,367.38); and (3) the ISRA claim against Emme ($11,020.48).

## II. DISCUSSION

### A. Admission of Prior Copyright Lawsuit

Appellants argue that the district court abused its discretion by allowing trial testimony and argument relating to Eve of Milady's copyright infringement case against Impression. Appellants moved in limine to preclude evidence of the lawsuit, arguing that accusations of Nick Yeh unlawfully copying Eve of Milady's designs would have a highly prejudicial effect. The district court denied the motion. Appellants also objected throughout trial to GBA's references to the lawsuit, but the district court overruled each objection.

GBA asserts that the lawsuit evidence was necessary to show the manner in which Emme was formed; i.e., Emme was formed in response to the lawsuit against Impression. Likewise, in its order denying Appellants' motion for new trial, the district court stated that "[t]he evidence was introduced to explain why and how Emme Bridal came into existence, and was therefore relevant." (D.E. 127 at 4.) Both Emme and the district court fail to connect the bridge; neither explains why Emme's formation remained relevant to the discrete issues before the jury: (1) breach of contract against Impression; and (2) ISRA against

5

Impression and Emme. The evidence only remained plausibly relevant to show that Emme arose out of Impression in a manner giving rise to successorship liability thereby making Emme liable under the contract. But this was precisely the argument made by GBA at summary judgment that the district court rejected. GBA provides us with no reason, and we know of none, why the prior lawsuit had any probative value.

Nonetheless, while the district court's allowance of the evidence may have been questionable, it is clear that any prejudice suffered by Impression did not rise to the level requiring reversal. It is well established that "an erroneous evidentiary ruling is a basis for reversal only if the complaining party's substantial rights were affected." *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1352 (11th Cir. 2007); *see also Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1316 (11th Cir. 2005) ("We will only reverse a district court's ruling concerning the admissibility of evidence where the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party." (internal quotation marks omitted)). To satisfy this standard, Appellants bear "the burden of proving that the error probably had a substantial influence on the jury's verdict." *Proctor*, 494 F.3d at 1352 (internal quotation marks omitted).

Appellants refer to five points during the trial where GBA raised the

copyright lawsuit. First, GBA stated at opening argument that Eve of Milady claimed, in its copyright infringement case, that Impression "improperly copied Eve of Milady lace patterns" and that Nick Yeh told his sales reps that he was "going to do what he needed to do to preserve Impression," which led to the formation of Emme for the purpose of manufacturing "not impermissible copies." (Tr. Vol. 4 at 7.)

Second, Gary Brown, on direct examination, testified that: (a) "there was a lawsuit filed against Impression by Eve of Milady for copyright infringement for copying lace patterns on [Eve of Milady] dresses that were declared artwork and copyrighted"; (b) the name "Emme" was created from the "initials of Eve Muscio, who was the designer of Eve of Milady, so it was sort of a way to stick it a little bit"; and (c) Emme was created to "protect Impression" and to keep Emme's designs from becoming part of the copyright lawsuit. (Tr. Vol. 5 at 110-113.)

Third, Nick Yeh, on cross-examination, was asked whether: (a) Eve of Milady claimed that Impression was making copies of Eve of Milady's dresses (Yeh agreed); (b) as a result of the lawsuit, Impression had to stop making exact copies (Yeh agreed); (c) there was a way to copy the dresses without violating Eve of Milady's patent rights (Yeh agreed); and (d) the compliant copies ultimately became the Emme product line (Yeh disagreed). (Tr. Vol. 8 at 84-85.)

7

Fourth, Mike Yeh, on cross-examination, was asked several questions relating to the copyright lawsuit. The heart of the exchange was as follows:

Question: [Y]ou acknowledged that the dresses that Emme made initially were in fact copies of the Eve of Milady dresses, but compliant – but which didn't improperly copy the lace designs, correct?

Answer: Yes, that's pretty much standard in the business, that other people mix in with a dress that's similar to other people, when there's a hot dress, hot line, everybody does the same thing. It's a standard of the industry and Mr. Brown also knew about that and testified that also.

(Tr. Vol 8 at 120.)

Finally, at closing argument GBA stated: "You also heard evidence that some time around 1997 a lawsuit was filed against Impression Bridal claiming that Impression Bridal improperly copied designer styles. It was at that point in time that Emme Bridal arose, which was born." (Tr. Vol. 10 at 68.)

Appellants argue that credibility was crucial to this case because no copy of a fully executed contract existed. The jury, therefore, had to decide whether to believe GBA that there was a binding written agreement or believe Appellants that there was only a verbal agreement. The copyright lawsuit, Appellants argue, was GBA's best evidence to put Impression's credibility in question.

After conducting a thorough examination of the trial transcript, we cannot hold that the evidence "probably had a substantial influence on the jury's verdict."

8

*Proctor*, 494 F.3d at 1352 (internal quotation marks omitted). Our review reveals that the copyright lawsuit was never a focus of the trial;[2] rather, the meat of the trial involved the course of events surrounding the drafting, modifying, and alleged signing of the written contract, the method in which Impression and Emme operated their businesses, the sales and marketing efforts of GBA conducted over thirteen years, the gradual dissolution of the relationship between GBA and the Appellants, the ultimate termination of GBA, and the amount of commissions GBA asserted it was entitled to.

Equally important, we do not believe that the substance of the evidence substantially put into question Impression's credibility. The evidence was that the copyright infringement suit caused—whether by final judgment, settlement, or voluntary cessation (it was not made clear at trial)—Impression to cease its method of copying Eve of Milady's designs. However, the evidence also showed that a Special Magistrate advised that only a slight modification was necessary to make permissible versions of Eve of Milady's designs. In addition, the undisputed testimony of Mike Yeh was that the standard practice of the bridal manufacturing business was to "mix in" designs from other "hot line[s]." (Tr. Vol. 8 at 120). We

---

[2]GBA represented, and Appellants did not dispute, that references made to the copyright lawsuit amounted to no more than thirty-seven lines in the transcript of a three-day trial.

are unpersuaded that such evidence created an impression of untrustworthiness worth any significance. Even if we were to assume it did, the impression would still have to translate to the altogether unrelated action of refusing to pay commissions due to a terminated sales representative, which stretches outside the realm of probability.

We, therefore, hold that the admission of the copyright lawsuit was not sufficiently prejudicial to require reversal.

## B. Emme's Breach of Contract Liability

GBA cross-appeals the district court's holding that Emme was not liable under the contract between GBA and Impression as a matter of law. We review the district court's grant of summary judgment de novo. *Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1020 (11th Cir. 1995).

While it is undisputed that Emme did not come into existence until five years after GBA and Impression entered into the contract, GBA relies on the contractual language providing that the agreement shall be binding upon the parties' "heirs, successors, assigns and successors-in-interest." GBA contends that Emme was either a successor-in-interest, an assignee, or a ratifier.

10

## 1. Successor-in-Interest

Under Florida law,[3] the liabilities of a selling predecessor corporation will not be imposed upon the buying successor corporation unless "(1) the successor impliedly assumes the obligations of the predecessor, (2) the transaction is a de facto merger, (3) the successor corporation is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." *Orlando Light Bulb Serv. Inc. v. Laser Lighting & Elec. Supply, Inc.*, 523 So. 2d 740, 742 (Fla. Dist. Ct. App. 1988).

In this case, GBA's theory of successorship fails from the outset as GBA does not establish a successor-predecessor relationship between Impression and Emme. There was no transfer or merger of assets from Impression to Emme. As we have said elsewhere, "[g]enerally, one of the fundamental requirements for consideration of the imposition of successor liability is a merger or transfer of assets between the predecessor and successor companies." *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1237 (11th Cir. 2005).

Here, where Emme was formed as a separate company, where Emme purchased none of its assets from Impression, where neither Impression nor Nick

---

[3] The district court applied Florida law to the question of Emme's contractual liability and no party raises the choice of law issue on appeal.

Yeh had any ownership interest in Emme and received no royalties from Emme, where Impression continued its business and did not dissolve subsequent to Emme's formation, and where there has been no assertion of fraud, we cannot hold that GBA established an issue of material fact as to successor-in-interest liability. *See, e.g.*, *Bernard v. Kee Mfg. Co., Inc.*, 409 So. 2d 1047, 1048 (Fla. 1982) (holding that successor-in-interest relationship did not exist where the old company sold its manufacturing business to a new company operating under different ownership and management); *Orlando Light Bulb Servs., Inc.*, 523 So. 2d at 742-43 (holding that successor-in-interest relationship did not exist where alleged successor was separately owned and acquired only a limited amount of assets from alleged predecessor); *cf. Amjad Munim v. Azar*, 648 So. 2d 145, 154-55 (Fla. Dist. Ct. App. 1994) (holding that successor-in-interest existed where ownership between the old and new companies was the same, the new company began when the old company ceased, and the new company provided the same services to the same clients while using the same staff)**.**

## 2. Assignment

GBA asserts that Impression assigned the contract to Emme. An assignment is "a transfer or setting over of property or of some right or interest therein, from

one person to another." *State Farm Fire & Cas. Co. v. Ray*, 556 So. 2d 811, 812 (Fla. Dist. Ct. App. 1990) (internal quotation marks omitted). An "assignment transfers to the assignee all the interest of the assignor under the assigned contract, [leaving] the assignor [with] no right to make any claim on the contract once the assignment is complete, unless authorized to do so by the assignee." *Id*. at 813. As Appellants point out, it is undisputed that Impression maintained its interest in the employment contract from 1992 through GBA's termination in 2003. Since there was never a time when Impression relinquished its interest in the contract to Emme or to anyone else, it follows that Emme was not assigned the contract.

### 3. Ratification

GBA argues that Emme ratified the agreement. "Ratification of an agreement occurs where a person expressly or impliedly adopts an act or contract *entered into in his or her behalf by another without authority*." *Deutsche Credit Corp. v. Peninger*, 603 So. 2d 57, 58 (Fla. Dist. Ct. App. 1992) (emphasis added); *Port Largo Club, Inc. v. Warren*, 476 So. 2d 1330, 1333 (Fla. Dist. Ct. App. 1985) (same). As stated previously, Impression and GBA entered into the contract in 1992—five years before Emme was formed. The contract, therefore, was not entered into on Emme's behalf or without Emme's authorization as Emme did not exist at the time.

Because Emme was not a successor-in-interest, assignee, or ratifier, we affirm the district court's grant of summary judgment precluding GBA from recovering under the contract against Emme.

## C. Exemplary Damages

GBA cross-appeals the district court's grant of summary judgment that barred GBA from seeking exemplary damages under ISRA. Our review is, again, de novo. *Gibson*, 51 F.3d at 1020.

In its summary judgment order, the district court held that ISRA punitive damages were unavailable because GBA had "not alleged any facts which, if true, would establish that Defendants' alleged failure to pay commissions rises to the level of egregious or outrageous conduct." (D.E. 82 at 5.) GBA argues that this particular holding was sua sponte and failed to provide GBA with an adequate opportunity to support its request for punitive damages.

In their Motion for Summary Judgment, Appellants attacked the ISRA claim as a whole, arguing that GBA was not within the class of persons the statute was designed to protect. While Appellants noted that GBA was requesting punitive damages, Appellants did not challenge them separately.

Rule 56 of the Federal Rules of Civil Procedure provides that a motion for

14

summary judgment "shall be served at least 10 days before the time fixed for the hearing" and allows nonmovants "to serve opposing affidavits at any time prior to the day of the hearing." Fed. R. Civ. P. 56(c). We have explained that Rule 56's notice provision is "a vital procedural safeguard" that ensures "litigants will have at least ten days in which to formulate and prepare their best opposition to an impending assault upon the continued viability of their claim or defense." *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997).

We need not reach whether GBA was provided with sufficient notice because even if GBA had been expressly notified that punitive damages were at issue, the outcome would have been the same. *See Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1202 (11th Cir. 2003) (per curiam) ("[E]ven if the district court had formally told [appellant] that the new claims would be addressed in the summary judgment proceedings, we are convinced that the outcome would not have been different."); *Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 (11th Cir. 1995) (holding that where appellant failed, even on appeal, to marshal facts and arguments that would have precluded summary judgment, "any violation of the 10-day notice rule [was] harmless").[4]

---

[4] We note that GBA gives no indication of additional evidence, beyond the evidence in the record before the district court at summary judgment, that would create an issue of material fact. As such, this is not a case that implicates the concern of a non-movant not being afforded

15

Because ISRA is an Illinois statute, we look to Illinois case law to interpret the statute.[5] Punitive damages under ISRA are only available when the "conduct involv[es] an element of outrage similar to that normally found in crime." *Maher and Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1008 (Ill. App. Ct. 1994) (internal quotation marks omitted). The conduct must be "outrageous" such that the "defendant's acts are done with an evil motive or with reckless indifference to the rights of others." *Id.* (internal quotation marks omitted).

GBA contends that two post-termination emails from Nick Yeh to Garry Brown, which were a part of the record evidence (D.E. 44 at 6), gave rise to an issue of material fact as to Impression and Emme's requisite mental state. The emails both depict Nick Yeh requesting the return of certain sales materials before payment would be made to GBA and, if not returned, GBA would have to resort to litigation to get any commissions due.

We cannot conclude that Nick Yeh's instruction to return his materials or pursue litigation rises to the type of outrageous conduct "similar to that normally

an adequate opportunity to develop the record on a factual dispute. *See Artistic Entm't, Inc.*, 331 F.3d at 1201.

[5] "In determining the law of the state, federal courts must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise." *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).

found in crime." *Id.* As such, we find no error in the district court's grant of summary judgment on punitive damages under ISRA.

**D. Reduction of Attorney's Fees & Costs**

"We review an award of attorney's fees by the district court only for an abuse of discretion." *Johnson v. Breeden*, 280 F.3d 1308, 1326 (11th Cir. 2002). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Id.* (internal quotation marks omitted).

GBA cross-appeals the district court's order that reduced GBA's proffered attorney's fees by approximately sixty-five percent ($99,661.50 to $34,908.75) and reduced proffered costs from $25,921.05 to $611.00. Fees and costs were only recoverable under GBA's ISRA claim—not GBA's breach of contract or accounting claims. The district court found that GBA made no attempt to specify what fee entries related to which claim and submitted no testimony as to apportionment. *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) ("[F]ee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the

17

time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity."). The district court determined that GBA's time was split fifty-fifty between the ISRA claim on the one hand, and the breach of contract and accounting claims on the other. As such, only fifty percent of the total fee was awardable. The court found that a further fifteen percent reduction was necessary in light of the excessive and redundant nature of the recorded entries; specifically, three lawyers worked on the case and the majority of the time was billed in full or half-hour increments. We find no abuse of discretion in the district court's determination as to fees.

As for costs, the trial court found that plaintiff's request was either: (1) not recoverable under 28 U.S.C. § 1920; or (2) not stated with requisite specificity. Specifically, GBA's requests for mediation expenses, meals, courier/postage, Lexis-Nexis research, air fare, and lodging are not included under § 1920. *See* 28 U.S.C. § 1920; *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (per curiam) (holding that "costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees . . . are clearly nonrecoverable" under § 1920). In addition, GBA requested a total of $6,698.82 for unspecified copying by an outside provider, which did not allow the court to determine whether the documents were necessarily obtained for use in the case.

*See* 28 U.S.C. § 1920(4) ((providing for "[f]ees for exemplification and copies of papers *necessarily obtained for use in the case* (emphasis added)). The district court also found that a general $4,602.90 charge for deposition transcripts lacked the requisite specificity. *See* 28 U.S.C. § 1920(2) (providing for "[f]ees of the court reporter for all or any part of the stenographic transcript *necessarily obtained for use in the case*" (emphasis added)). As before, we find no abuse of discretion.

### III. CONCLUSION

After oral argument and careful consideration of the record and the parties' briefs, we conclude that the judgment of the district court is due to be affirmed.

**AFFIRMED.**